**IN THE UNITED STATES DISTRICT COURT FOR**
**THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN ANDERSON CONSTRUCTION, INC., | ) | |
| Plaintiff, | ) | C.A. No.: 4:26-CV-3004 |
| v. | ) | **Jury Trial Demanded** |
| ENCOMPASS PIPELINE, LLC, | ) | ELECTRONICALLY FILED |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff, John Anderson Construction, Inc. ("JAC"), by and through its undersigned counsel, files this Complaint against Defendant, EnCompass Pipeline, LLC ("EnCompass").

## I. Nature of Claims

1. JAC brings this action for patent infringement against EnCompass for making, using, selling, offering for sale, and/or importing a pig loader device that incorporates patented technology owned by JAC.

2. By this Complaint, JAC asserts U.S. Patent Nos. 9,989,186 ("the '186 Patent") and 11,644,145 ("the '145 Patent") against EnCompass to prevent Encompass' infringing conduct.

## II. The Parties

3. JAC is a Pennsylvania corporation with a principal place of business at 2033 Pennsylvania Avenue E, Warren, Pennsylvania 16365.

4. EnCompass is a Minnesota limited liability company with an address of 1121 Southeast 4th Avenue, Grand Rapids, Minnesota 55744.

5. EnCompass has offices in Washington, Troy, and Canonsburg, Pennsylvania, including a field office in Troy, Pennsylvania, with an address of 22605 Route 14, Troy, Pennsylvania 16947.

## III. Jurisdiction and Venue

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over EnCompass because EnCompass purposefully directed its activities into this forum, this action arises out of and directly relates to these activities, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

8. EnCompass (1) has places of business in Pennsylvania and in this judicial district; (2) engages in business in Pennsylvania and in this judicial district; (3) makes and/or uses the infringing pig loader device in Pennsylvania and in this judicial district; (4) has directly harmed and is directly harming JAC in Pennsylvania including without limitation this judicial district; (5) knew JAC would be and knows

JAC is being directly harmed in Pennsylvania including without limitation this judicial district; and (6) has knowingly and actively engaged in acts that have infringed and will infringe and/or contribute, induce, aid and/or abet the direct infringement of claims of the '186 Patent and the '145 Patent in this judicial district as well as other parts of Pennsylvania.

9. Under these circumstances, it is foreseeable that EnCompass would be required to appear in the United States District Court for the Middle District of Pennsylvania to respond to JAC's claims.

10. Venue is proper in the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. § 1391 because (1) this Court has personal jurisdiction over all parties; and (2) a substantial part of the events giving rise to the claims in this action occurred in this judicial district, including the harm caused by EnCompass' wrongful conduct.

11. Venue is proper in the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. § 1400 because (1) JAC asserts patent infringement claims against EnCompass; (2) EnCompass has a regular and established place of business in this judicial district (e.g., its field office in Troy, Pennsylvania); and (3) EnCompass committed acts of infringement in this judicial district.

## IV. Background

### A. JAC's Operations.

12. JAC is a dynamic construction firm headquartered in Warren, Pennsylvania, that specializes in a wide variety of construction related services, including, among other things, general contracting services, civil services, fabrication operations, engineering services, and pipeline operations.

13. JAC offers a full spectrum of engineering, construction, maintenance, integrity, and specialized services, and its expertise spans major capital projects, infrastructure development, and cutting-edge energy solutions.

14. JAC is at the forefront of pipeline operations, and its deep industry expertise allows it to provide comprehensive services and solutions that span the entire lifecycle of pipeline operations—from initial design and construction through monitoring, maintenance, and optimization.

15. JAC's pipeline operations services include, among other things, horizontal directional drilling services, trenchless technologies services, pipeline installation and repair services, integrity management services, and environmental compliance services.

**B. JAC's Patented Pig Loader Device Technology.**

16. The '186 Patent, titled "Pig Loader Device," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on June 5, 2018. A true and correct copy of the '186 Patent is attached hereto as Exhibit A.

17. The '145 Patent, titled "Pig Loader Device," was duly and legally issued by the USPTO on May 9, 2023. A true and correct copy of the '145 Patent is attached hereto as Exhibit B. The '145 Patent is a continuation of the '186 Patent. (*See* Ex. B, at p. 8).

18. JAC owns all rights, title, and interests in the '186 Patent and the '145 Patent. (*See* Ex. A, at p. 1; Ex. B, at p. 1).

19. The '186 Patent and the '145 Patent concern a pig loader device, which was invented by John Anderson ("Mr. Anderson"), a stalwart of Warren, Pennsylvania, and the founder of JAC, and John Shelley ("Mr. Shelley"), to reduce the significant dangers associated with pipeline maintenance. (*See* Ex. A, at pp. 1, 8).

20. To facilitate the processing of oil and gas, surfactants, dispersants, and other compounds are introduced into the pipeline. "These compounds, as well as the organic and volatile compounds extracted with the oil and gas, tend to adhere to and create obstructions with the pipeline." (*See* Ex. A, at p. 8).

21. A common practice implemented to clean the bore of the pipe comprising the pipeline is to use a wad or plug, which is commonly referred to as a pig. (*Id.*). "The pig is introduced into the pipe and forced through the pipeline to entrain and push any buildup deposited on the pipe to be extracted from the pipeline." (*Id.*).

22. Before Mr. Anderson and Mr. Shelley invented the pig loader device, the pig was introduced at the mouth of the pipeline through a funnel. (*Id.*). Operators held the pig in place with a rod, pipe, or piece of timber while the pig was pushed into the pipe with mobile equipment, such as an excavator or bulldozer. (*Id.*).

23. This method of conducting pigging operations was particularly dangerous to operators because of the pressures involved and the forces used to properly seat the pig within the pipe, and significant exposure to pinch points and objects becoming projectiles. (*Id.*).

24. To ameliorate the significant dangers posed by this method of conducting pigging operations, Mr. Anderson and Mr. Shelley invented the pig loader device. (*Id.*). Patent '186 states as follows:

> A pig loader device can include a breech assembly having a chamber body, a ramrod compartment, a breech, and a neck. A ramrod having a push plate, a rod, and a breech plate may be disposed within the ramrod compartment and configured to slideably traverse the ramrod compartment and the breech. In use, the device can be connected to an ancillary pipe via the neck, and a pig may be placed within the breech and aligned to be slid within the breech and neck upon engagement with the ramrod to facilitate pigging operations of a pipeline. The ramrod

> may then be forced forward to an extended position, thereby urging the pig through the neck to be seated within the pipe. The device may then be detached from the pipe to enable continued pigging operations.

(*Id.* at p. 1).

25. "The device . . . enable[s] operators to achieve a preparatory step of pigging a pipeline, which may include loading a pig into the pipeline, in a clean, safe, and efficient manner." (*Id.* at p. 8).

26. The pig loader generates a contained work area that ensures moving parts, potential pinch points, and potential projectiles are confined within the device. (*Id.*). Not only does the device remove the need for operators to handle the pig when it is introduced into the pipe, but it also prevents operators from being inadvertently injured by pinch points and projectiles. (*Id.*).

27. JAC practices the invention of the '186 Patent and the '145 Patent by making, selling, and using the pig loader device described in the '186 Patent and the '145 Patent.

**C. EnCompass Has Been and Continues to Infringe the '186 Patent and the '145 Patent.**

28. EnCompass provides various construction related services, including, among other things, trenchless pipeline services, horizontal directional drilling services, engineering services, civil services, pipeline construction services, and asset and integrity testing services, such as existing facility pigging. (*See* https://www.encompasspipelinellc.com/services). EnCompass offers these services

and performs these services in this judicial district from its Troy field office, for example.

29. EnCompass has conducted several pipeline projects in Pennsylvania, including (1) the Williams-Constable Loop Pipeline (18,980 LF of 12” pipeline); (2) the Williams-Gamble Buildout (27,600 LF of dual lay 12” pipeline and associated fabrications); (3) the Williams-Hunter Well Line (13,375 LF of 12” pipeline); (4) the Williams-Elly May Pipeline (10,235 LF of 12” pipeline); and (5) the Williams-Ashby Well Line and Wolfe Line (17,165 LF of 6” and 8” pipeline). (*See* https://www.encompasspipelinellc.com/projects).

30. EnCompass has been and is currently making and using an infringing pig loader device in this judicial district and throughout the United States. JAC understands that EnCompass may also be offering to sell this infringing device, is selling this infringing device, and/or is importing this infringing device into this judicial district and the United States.

31. EnCompass uses its infringing pig loader device in direct competition with JAC in conjunction with services EnCompass performs throughout the United States. JAC is a direct competitor of EnCompass and bids on the same service projects that EnCompass bids on. EnCompass uses the infringing pig loader in conjunction with its services to provide services it promotes as offering enhanced safety in direct competition with JAC.

32. EnCompass' pig loader device it uses in direct competition with JAC infringes, at the very least, claim 1 of the '186 Patent and claims 1, 8, and 18 of the '145 Patent. (*See* Ex. C).

33. The Claim Charts attached hereto as Exhibit C demonstrate that EnCompass' pig loader device infringes these claims by demonstrating in detail how the device has all the features required by at least claim 1 of the '186 Patent and at least claims 1, 8, and 18 of the '145 Patent. (*See* Ex. C).

34. The Claim Charts of Exhibit C include accurate pictures of EnCompass' infringing pig loader device.

35. These Claim Charts are non-limiting examples illustrating how EnCompass' pig loader device infringes the claims of the '186 Patent and the '145 Patent.

36. By letter dated June 24, 2026, JAC advised EnCompass that (1) JAC's '186 Patent and '145 Patent are directed towards technology for a pig loader device; and (2) EnCompass' pig loader device infringes at least claim 1 of the '186 Patent and at least claims 1, 8, and 18 of the '145 Patent. (*See* Ex. D, at p. 2). A true and correct copy of JAC's June 24, 2026 letter is attached hereto as Exhibit D.

37. At the same time, JAC "demand[ed] that EnCompass cease and desist its infringement of the '186 Patent and the '145 Patent[,] . . . [and] discontinue

further manufacturing and use (as well as offering for sale, selling and importing) the infringing pig loader device in the United States." (*Id.* at p. 3).

38. In a good faith effort to resolve this matter amicably, JAC further offered (1) to sell the pig loader device covered by the '186 Patent and the '145 Patent to EnCompass; or alternatively, (2) to license the device to EnCompass in exchange for royalty payments. (*Id.*).

39. By letter dated August 3, 2026, EnCompass responded to JAC's June 2026 letter. A true and correct copy of EnCompass' August 3, 2026 letter is attached hereto as Exhibit E. In its August 3, 2026 letter, EnCompass admitted that it manufactures the pig loader device at issue in this litigation, uses its infringing device, and, at the very least, that its pig loader device currently infringes the '145 Patent. (*See* Ex. E, at p. 1) ("EnCompass can also further distinguish its Device from the 145 patent by modifying it so that the Pig can be loaded from either direction.").

40. EnCompass (1) refused to stop infringing the '186 Patent and the '145 Patent; (2) stated that it "will not agree to entertain any settlement discussions with [JAC] now or in the future[]"; and (3) stated that JAC "need[ed] to commence litigation . . . ." to pursue its rights. (*Id.* at pp. 1–2).

41. As set forth above, EnCompass has been and continues to make, use, sell, offer for sale, and/or import the infringing pig loader device in this judicial district and other parts of the United States.

42. EnCompass has committed acts of patent infringement and continues to commit acts of patent infringement within this judicial district and the United States by making, using, selling, offering to sell, and/or importing the infringing pig loader device.

43. At least as early as June 24, 2026, EnCompass knew of the ’186 Patent and the ’145 Patent and knew that its pig loader device infringed at least claim 1 of the ’186 Patent and at least claims 1, 8, and 18 of the ’145 Patent. (*See* Ex. D).

44. EnCompass knew of the ’186 Patent prior to June 25, 2026.

45. EnCompass knew of the ’145 Patent prior to June 25, 2026.

46. EnCompass has knowingly and willfully infringed the ’186 Patent and the ’145 Patent, and JAC has been and will continue to be irreparably harmed by EnCompass’ infringement of the ’186 Patent and the ’145 Patent.

47. EnCompass’ infringement is clearly willful. As a non-limiting example, EnCompass has told JAC that even though it infringes the ’145 Patent, it will continue to do so. (*See* Ex. E).

**COUNT I**
**<u>INFRINGEMENT OF THE ’186 PATENT</u>**

48. JAC restates and realleges the foregoing allegations as if fully stated herein.

49. EnCompass has infringed and continues to infringe at least claim 1 of the ’186 Patent in violation of 35 U.S.C. § 271(a).

50. JAC has been and continues to be damaged and irreparably harmed by EnCompass' infringement, which will continue unless the Court enjoins EnCompass' infringement.

51. JAC is entitled to recover damages adequate to compensate it for EnCompass' infringement under 35 U.S.C. § 284.

52. EnCompass' infringement of the '186 Patent has been and continues to be deliberate, willful, and knowing.

53. The Court should declare this an exceptional case under 35 U.S.C. § 285 and award JAC treble damages and attorneys' fees.

WHEREFORE, JAC requests that the Court grant the relief requested in the Prayer for Relief below.

## COUNT II
## INFRINGEMENT OF THE '145 PATENT

54. JAC restates and realleges the foregoing allegations as if fully stated herein.

55. EnCompass has infringed and continues to infringe at least claims 1, 8, and 18 of the '145 Patent in violation of 35 U.S.C. § 271(a).

56. JAC has been and continues to be damaged and irreparably harmed by EnCompass' infringement, which will continue unless the Court enjoins EnCompass' infringement.

57. JAC is entitled to recover damages adequate to compensate it for EnCompass' infringement under 35 U.S.C. § 284.

58. EnCompass' infringement of the '145 Patent has been and continues to be deliberate, willful, and knowing.

59. The Court should declare this an exceptional case under 35 U.S.C. § 285 and award JAC treble damages and attorneys' fees.

WHEREFORE, JAC requests that the Court grant the relief requested in the Prayer for Relief below.

## **DEMAND FOR JURY TRIAL**

60. JAC demands a trial by jury under the Federal Rules of Civil Procedure for all issues triable by jury.

## **PRAYER FOR RELIEF**

JAC prays for judgment in its favor and against EnCompass as follows:

(a) That EnCompass has infringed one or more claims of the '186 Patent and the '145 Patent;

(b) That JAC be awarded damages for EnCompass' infringement of the '186 Patent and the '145 Patent;

(c) That EnCompass' infringement of the '186 Patent and the '145 Patent has been willful;

(d) That this case be declared an exceptional case under 35 U.S.C. § 285;

(e) That JAC's damages be trebled pursuant to 35 U.S.C. § 284;

(f) That JAC be awarded its attorneys' fees and costs pursuant to 35 U.S.C. § 285;

(g) That the Court permanently enjoin EnCompass, its officers, directors, principals, agents, servants, employees, successors, assigns, affiliates, and all that are in active concert or participation with EnCompass, or any of them, from further infringement of the '186 Patent and the '145 Patent, and that EnCompass be permanently enjoined from infringing the '186 Patent and the '145 Patent and from making, using, selling, offering to sell, importing, or distributing EnCompass' infringing products.

(h) That JAC is entitled to all forms of exemplary and punitive damages based on EnCompass' willful, intentional, and malicious conduct;

(i) That JAC be awarded pre- and post-judgment interest on all damages;

(j) That JAC be awarded all its costs and expenses in this action; and

(k) Such further and other relief as the Court may deem just and proper.

**[SIGNATURE PAGE FOLLOWING]**

Respectfully submitted,

Dated: October 8, 2026

By: s/*Anthony (T.J.) Andrisano*
Anthony (T.J.) Andrisano, Esquire
(PA I.D. No. 201231)
anthony.andrisano@bipc.com
**Buchanan Ingersoll & Rooney PC**
409 North Second Street, Suite 500
Harrisburg, PA 17101
T: (717) 237-4968
F: (717) 233-0852

Ralph G. Fischer, Esquire
(PA I.D. No. 200793)
(*pro hac vice* forthcoming)
ralph.fischer@bipc.com
Jason P. Camillo
(PA I.D. No. 313643)
(*pro hac vice* forthcoming)
jason.camillo@bipc.com
**Buchanan Ingersoll & Rooney PC**
501 Grant Street, Suite 200
Pittsburgh, PA 15219
T: (412) 562-8800
F: (412) 562-1041

***Attorneys for Plaintiff***